The Law Offices of Jacob Aronauer
225 Broadway, 3rd Floor
New York, New York 10007
(212) 323-6980
jaronauer@aronauerlaw.com

September 4, 2020

**Via ECF**
Honorable James L. Cott
United States Courthouse
500 Pearl Street.
New York, NY 10007

Re:    19-cv-05856 (JLC)
       *Macancela et al. v. Port Drago Corp. et al.*

Dear Judge Cott:

Plaintiffs Eduardo Macancela, Victor Disla, Jose Gino DeSouza, Marco Tulio Saldanha, Jose Armando Sambula, Edgar Fernando Velicela, Edgar Patricio Velicela, John Jairo Velicela ("Plaintiffs"), together with Defendants Port Drago Corp. and Charles Drago ("Defendants" collectively) (referred to together with Plaintiffs as the "Parties"), respectfully request that Your Honor approve the settlement [1] reached in this matter (annexed as **Exhibit A**).[2]

## Introduction

On June 21, 2019, Plaintiff Eduardo Macancela, on behalf of himself and a putative collective of similarly situated individuals, filed this lawsuit for unpaid wages under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), as well as for failing to provide required notices of pay rate upon hire and accurate weekly wage statements under the New York Wage Theft Prevention Act ("NYWTPA"). Plaintiffs Victor Disla, Jose Gino DeSouza, Marco Tulio Saldanha, Jose Armando Sambula, Edgar Fernando Velicela, Edgar Patricio Velicela, John Jairo Velicela subsequently joined the action as opt-in Plaintiffs. Plaintiffs were former employees at a shoe shine/shoe repair store "Dragos," and allege that they were employees of the Defendants at all times relevant to this action.

Defendants denied all of the allegations asserted against them in the Complaint and asserted various affirmative defenses in their Answer. The parties engaged in extensive

---

[1] While Plaintiffs also bring claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), settlement of those claims does not require court approval for dismissal. *See, e.g., Yunda v. SAFI-G, Inc.*, 2017 WL 1608898, at *1 (S.D.N.Y. Apr. 28, 2017) (citing *Abrar v. 7-Eleven, Inc.*, 2016 WL 1465360, at *81 (E.D.N.Y. Apr. 14, 2016) (". . . the NYLL settlement agreement does not require judicial approval.")

[2] We expect to provide the Court a fully signed settlement agreement by the end of next week.

written discovery and depositions were postponed due to COVID-19. After months of arm's-length negotiation between experienced employment law counsels, the parties reached a settlement agreement that they believe to be fair and reasonable in all respects under applicable case law and should be approved by the Court.

## Work Performed by Plaintiffs' Counsel

While the case settled prior to depositions, Plaintiffs' counsel still performed significant and extensive work. Plaintiffs' counsel met with Plaintiff Macancela at least five times in their offices to learn and further focus their understanding of the facts in this case. In addition, Plaintiffs' counsel negotiated, drafted and ensured the effective delivery of notice to the FLSA Collective.

Notice was successful as seven additional former employees of Defendants joined this lawsuit. At the time they opted in, Plaintiffs' counsel met with each new opt-in at least once to learn and understand what they experienced while employed by Defendants. Plaintiffs' counsel carefully reviewed the months of Plaintiffs' pay and time documents. This led to Plaintiffs' counsel's staff spending substantial time creating different spreadsheets reflecting various different potential damage scenarios.

## The Settlement Agreement

The total settlement amount is $200,000.00, of which Plaintiffs' counsel shall receive $67,090.53 and Plaintiffs shall receive $132,909.47. Plaintiffs' counsel incurred $635.00 in expenses, which includes payment of the filing fee ($400.00) and service on Defendants ($235.00). After expenses, Plaintiffs' counsel seeks 1/3 of the recovery as agreed to by the Plaintiffs in their respective retainer agreements. As this Court has held that a 1/3 attorneys' fee is generally accepted in wage and hour collective action settlements, Plaintiffs respectfully submit that an allocation of slightly less than 1/3 should be approved. *See Benavides v. Serenity Spa NY, Inc.*, 2018 U.S. Dist. LEXIS 88331, at *10 (S.D.N.Y. May 25, 2018) (Judge Cott noting that attorneys receiving 1/3 of the recovery in FLSA cases is the norm); *see also Howard v. Don Coleman Adver. Inc.*, 2017 U.S. Dist. LEXIS 28080, at *4 (S.D.N.Y. Feb. 28, 2017) (Judge Cott holding that he could not approve the settlement agreement because it did not list the attorney fee allocation but forewarned plaintiff's counsel that any request beyond 1/3 would most likely not be approved).

If Plaintiffs were to prevail on all their wage claims, excluding WTPA violations and liquidated damage, their damage would total approximately $1,000,000.

Defendants denied all of the allegations asserted against them in the Complaint and, during the course of litigation, have produced over a thousand-and-five-hundred pages of time and pay records. Defendants argued, among other things, that (1) Plaintiffs' overtime claims were grossly exaggerated and readily refuted by Defendants' daily and weekly time records; and (2) Defendants were not Plaintiffs' employer for all or part of their respective employment. Defendants also maintained that the records of cash and check payments

Plaintiffs received during the respective pay period established that they were paid at least the minimum wage for that pay period.

If Defendants were to prevail on all of their defenses, Plaintiffs would be entitled to no damage as compared to Plaintiffs' purported damages calculations. Significantly, if the case were to proceed to trial, Defendants believe they would have been able to demonstrate via documentary evidence and witness testimony that Plaintiffs were properly paid all wages due.

Plaintiffs, however, questioned the accuracy of Defendants' time records and claim that they were regularly required to work more than 40 hours a week and were not required to "clock in and clock out." Thus, the case truly hinges on the credibility of the parties, with the Plaintiffs, of course, saddled with the burden of proof.

Given this heavily contested litigation, which included the production of thousands of pages of document discovery, pending the numerous depositions to be taken, and a significant risk on both sides if this case were to proceed to trial, the Parties believe that the settlement amount reflects a reasonable compromise between the parties' dispute. Moreover, Plaintiffs were incentivized to settle because Defendants are willing to pay the settlement in a lump sum payment. In light of the on-going pandemic, which has had a devastating impact on Defendants' business, there is real value in Plaintiffs being able to be made whole in one payment under the parties' settlement agreement. Needless to say, this makes Plaintiffs' acceptance of the compromised settlement amount understandable.

FLSA settlements must still be scrutinized under *Cheeks*, before a stipulated dismissal takes effect. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2nd Cir. 2015). Under *Cheeks*, a settlement should be approved if the proposed agreement reflects "a reasonable compromise over contested issues." *Kochilas v. Nat'l Merchant Servs., Inc.*, No. 14 Civ. 311, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015).

Although Plaintiffs' range of recovery varies, they are unlikely to recover on all of their claims, making this settlement reasonable. For example, Plaintiff Jose Armando Sambula worked for Defendants from January 2014 through November 2018. Based on Plaintiff's counsel's damages calculation and model, his best case scenario is slightly over $75,000. Under the Settlement Agreement, Mr. Sambula will receive $16,710.09, which is 22% percent of what Plaintiffs contend he is owed under the best circumstances. Due to the multiple legal and factual challenges Plaintiffs faced, this recovery is reasonable. *See, Redwood v. Cassway Contracting Corp.*, 16 Civ. 3502, 2017 WL 4764486, at *2 (S.D.N.Y. Oct. 18, 2017) (reduced net settlement of maximum recovery is reasonable).

The terms of the parties' release also render this settlement reasonable. Under *Cheeks*, a release of FLSA claims cannot include the release of all possible claims against the Defendants and must be properly tailored. *Yunda v. SAFI-G, Inc.*, 15 Civ. 8861, 2017 WL 1608898, at *3 (S.D.N.Y. April 28, 2017). Here, the release is appropriately tailored and only requires Plaintiffs to release Defendants under the FLSA, NYLL and other regulatory and/or common law claims related to wages and compensation.

Plaintiffs have reviewed the Court's August 5, 2020 order, which provided the parties guidance with respect to ensuring that the settlement agreement complies with *Cheeks* and its progeny. The agreement does not include a no re-employment provision. Nor does the agreement prohibit communication with the media or, for that matter, include a confidentiality provision. As previously discussed, Plaintiffs have not entered into a general release, but rather the release is limited to their wage and hour claims under the FLSA and NYLL.

Pursuant to the Court's directive, Plaintiffs have reviewed the following settlement agreements submitted in *Rodriguez v. Emenike*, 18-cv-5786 (Dkt. Nos. 36, 38; Dkt No. 37 (court approval order)); *Yahuiti v. L Ray LLC*, No. 19-cv-1114 (Dkt No. 24 (settlement agreement); Dkt. No. 25 (court approval order); *De Luna Hernandez v. City Catering*, No. 18-cv-3919 (Dkt. No. 49 (settlement agreement); Dkt. No. 50 (court approval order)); and *Sanchez v. New York Kimchi Catering Corp.*, No. 16-7784 (Dkt. No. 98 (settlement agreement); and Dkt. No. 99 (court approval order)). Plaintiffs submit that this application along with the parties' settlement agreement is consistent with prior settlement agreements approved by this Court.

### Plaintiffs' Attorneys' Experience

Bruce Menken is a named partner in Beranbaum Menken LLP. Mr. Menken is an accomplished negotiator and skilled trial lawyer. In 33 years of legal practice, he has a solid record of working on turning challenging cases into success stories for clients. Mr. Menken has been lead or co-counsel in many wage and hour collective and class cases that were successfully settled. See, *Ramos, et al., v. Simplex Grinnell LP*, 796 F.Supp.2d 346 (E.D.N.Y. 2011) (certifying class of over 500 electrical and sprinkler technicians in NY state-wide prevailing wage case that settled in maintenance and repair claims for $5.525 million in 2012 and testing and inspection claims for $9.5 million in late 2014). Mr. Menken has had numerous published court decisions and several cases highlighted in The New York Law Journal and The New York Times.

Courts in this circuit have awarded Mr. Menken fees in the past and as recently as 18 months ago, United States Magistrate Judge Stewart D. Aaron of the Southern District of New York awarded with brief discussion Mr. Menken his then regular rate of $600 per hour for work performed during litigation and trial of a 26 plaintiff wage and hour case. *See, Williams v. Epic Security Corp.*, 368 F.Supp.3d 651, 658 (S.D.N.Y. 2019); *see also, Ramos et al. v. Simplex Grinnell LP*, 09 Civ. 0981 (SMG) (in 2012 Magistrate Judge Steven M. Gold of the District Court for the Eastern District of New York approved a settlement of some of the claims in a wage and hour class action, including an attorneys' fee award that provided for a $500 hourly fee (without discussion and analysis) for work performed in 2011 and 2012, and then in 2015 in the same case, Magistrate Judge Gold approved a further settlement that provided for a $600 hourly fee (without discussion and analysis) for Mr. Menken's work).

Also, recently Magistrate Judge Ramon E. Reyes of the Eastern District Court approved a class action wage and hour settlement that awarded fees Mr. Menken fees at the hourly rate of $600, yet without discussion and analysis. *See, Perez v. Consolidated Housekeeping*, 18 Civ. 02979 (RER) (E.D.N.Y. Jan. 15, 2019).

Mr. Menken currently charges his individual clients $650 per hour as that is his present rate. See, **Exhibit V**(retainer agreements to be provide to JA). Mr. Menken spent 32.4 hours working on this case, and at his current $650 per hour rate, has a lodestar of $21,060.

Mr. Aronauer is the managing partner of The Law Offices of Jacob Aronauer. Mr. Aronauer has been practicing law since 2005 and started his own firm in 2013. Since he started his own law firm, Mr. Aronauer's practice has primarily focused on wage and hour law. Mr. Aronauer has handled over 100 wage and hour matters. From 2018-2020, Mr. Aronauer was voted a "Rising Star" in the New York area by Super Lawyers.

Mr. Aronauer's hourly rate is $350 an hour. This rate was approved by Southern District of New York Judge Paul Engelmayer. *Thomas v. River Greene Constr. Grp. LLC,* 2019 U.S. Dist. LEXIS 186576, at *8-9 (S.D.N.Y. Oct. 25. 2019) adopted by Judge Engelmayer, *Thomas v. River Greene Constr. Grp. LLC.,* 2019 U.S. Dist. LEXIS 198029 (S.D.N.Y. Nov. 14, 2019). This is a competitive rate in relation to what similarly situated attorneys charge.

Paralegals for the Law Offices of Jacob Aronauer in this case charged varying rates. Sian Ricketts has worked as a paralegal for The Law Offices of Jacob Aronauer since 2015 and is experienced supporting class action lawsuits and creating complicated excel spreadsheets. Ms. Ricketts graduated *magna cum laude* from Northwestern University with a B.M., and has a D.M.A. from Case Western Reserve University. Ms. Ricketts' hourly rate is $150. Karin Weston has worked as a paralegal for The Law Offices of Jacob Aronauer since 2016, and like Ms. Ricketts is also well versed in class action lawsuits and generating complicated Excel spreadsheets. Ms. Weston's hourly rate is $150.

The Law Offices of Jacob Aronauer also employs law students and other paralegals. Law students were billed at $150, as they performed more complicated legal work such as legal research and working on discovery issues. Other paralegals were billed at $100 an hour, and performed more routine work such as photo copying, mailing or translating.

The Law Offices of Jacob Aronauer spent a total of 79.43 hours litigating this case, and at the above various rates, its total lodestar is $15,531.00. Combined with Bruce Menken's lodestar, Plaintiffs seek attorneys' fees in the amount of $35,591.00which constitutes a modest multiplier of 1.83.[3]

Court approval of an FLSA settlement is appropriate "when [the settlement] [is] reached as a result of contested litigation to resolve bona fide disputes." *Johnson v.*

---

[3] Should the court wish to further assess Plaintiffs' application for fees, counsel are prepared to provide their contemporaneous time records for *in camera* review.

*Brennan,* No. 10-cv-471, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." Id. (citing *Lynn's Food Stores, Inc. v. United States,* 679, F.2d 1350, 1353 n. 8 (11th Cir. 1982)).

Given the conflicting evidence, the quality of the evidence and counsel and the allocation of the burden of proof on Plaintiffs, the settlement represents a reasonable compromise with respect to contested issues. We jointly request approval of the within settlement and application for attorneys' fees. *See Reyes v. Altamarea Group, LLC,* 10-cv-6451 (RLE), 2011 WL 4599822 at *6 (S.D.N.Y. Aug. 16, 2011) (Ellis, M.J.)

Respectfully submitted,

*/s/ Jacob Aronauer*
Jacob Aronauer

*/s/ Bruce Menken*
Bruce Menken

*Attorneys for Plaintiffs*

cc: **Via ECF**
    *All attorneys on record*

6

# EXHIBIT A

## SETTLEMENT AGREEMENT

Eduardo Macancela, on behalf of him and his heirs, executors, administrators, attorneys, and assigns ("Plaintiff") and Charles Drago and Port Drago Corp. d/b/a Drago Shoe Repair ("Drago Shoe Repair") (collectively "Defendants", and with Plaintiff, the "Parties" hereto) hereby agree upon this Settlement Agreement ("Agreement") as a resolution of all issues involved herein as follows:

WHEREAS, on or about June 21, 2019 Plaintiff filed a complaint in the United States District Court Southern District of New York, styled *Macancela v. Port Drago Corp. et al*, Case Number 1:19-cv-05856 (the "Lawsuit"), asserting claims that the Defendants in that action *inter alia*, allegedly violated the New York Labor Law ("NYLL") and Fair Labor Standards Act ("FLSA") by failing to pay Plaintiff overtime wages; and

WHEREAS, Marco Tulio Saldanha filed an opt-in consent to join the Lawsuit on January 6, 2020; and

WHEREAS, Victor Disla filed an opt-in consent to join the Lawsuit on January 10, 2020; and

WHEREAS, Jose DeSousa filed an opt-in consent to join the Lawsuit on January 10, 2020; and

WHEREAS, Jose Sambula filed an opt-in consent to join the Lawsuit on January 10, 2020; and

WHEREAS, Edgar F Velicela filed an opt-in consent to join the Lawsuit on January 14, 2020; and

WHEREAS, Edgar Sr. Velicela filed an opt-in consent to join the Lawsuit on January 14, 2020; and

WHEREAS, John Velicela filed an opt-in consent to join the Lawsuit on January 14, 2020; and

WHEREAS, Plaintiff and opt-in plaintiffs identified above (collectively, the "Plaintiffs") are alleged former employees of Drago Shoe Repair; and

WHEREAS, the Defendants and Releasees (that term defined below) expressly deny any and all allegations made or which could have been made in the Lawsuit, and also expressly deny that Defendants Releasees violated any law, statute, contract, rule, policy or duty owed Plaintiffs or engaged in any conduct that was wrong or improper and contend that Defendants Releasees have complied with all state, local and federal laws, rules and regulations and any other obligations, including FLSA and NYLL, as it or they relate to the employment of the Plaintiffs, or any alleged similarly situated individuals; and

**WHEREAS,** as a result of counsel discussions it appears there exists a bona fide dispute between the Parties regarding the amount of compensation, if any, alleged to be due; and

**WHEREAS,** the Parties wish to amicably resolve all differences between them;

**NOW, THEREFORE,** the Parties in consideration of the mutual covenants and commitments set forth herein, agree as follows:

1.    **Specific Wage and Hour Release by Plaintiffs.** In consideration of the promises, payments and actions of Defendants set out in this Agreement and other good and valuable consideration, the receipt of which is hereby acknowledged, with respect solely and only to conduct that has arisen on, or prior to, the date this Agreement is executed, Plaintiffs, individually and collectively, fully and forever release, relieve, waive, relinquish, and discharge the Defendants, any affiliated companies, subsidiaries (including but not limited to any grandchild entities, great grandchild entities, and so on), any parents (including but not limited to and any grandparent entities, great grandparent entities, and so on), affiliates, successors, related entities, assigns, heirs, executors, trustees, administrators, and attorneys, and all of their present and former directors, officers, partners, shareholders, members, employees, representatives, agents, attorneys, owners, and insurers (collectively "Releasees") from all actions, causes of action, suits, debts, dues, liabilities, obligations, costs, expenses, sums of money, controversies, accounts, reckonings, liens, bonds, bills, specialties, covenants, contracts, agreements, promises, damages, judgments, executions, claims and demands, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, which the Plaintiffs, each had, now has or hereafter can, shall or may have against the Defendants and other Releasees, from the beginning of the world through the date the execution of this Agreement, arising out of, by reason of, or relating in any way whatsoever any of the allegations contained in Plaintiffs' causes of action including any wage and hour claim, including but not limited to: all claims brought in the Lawsuit, all claims under the FLSA, NYLL, claims for minimum wages, overtime, commissions, and/or unpaid wages, compensation, and/or other remuneration, whether based on common law or otherwise, which specifically includes all claims for unpaid overtime, misclassification, failure to maintain records, improper deductions, travel time, spread of hours pay, bonuses, penalties, expense reimbursements, gratuities, fees, tip credits, tip allowances, service charges, retained gratuities, call-in pay, tools-of-the-trade, and/or meal credits during Plaintiffs' alleged employment with any of the Releasees and/or other compensation, wages, or benefits, and/or any related penalties, damages, liquidated damages and attorneys' fees under federal, state and/or local law.

2.    **Dismissal of Complaint.** In further consideration of the promises outlined in this Agreement, Plaintiff agrees to dismiss with prejudice, or cause to be dismissed with prejudice, the Complaint and the Lawsuit pending before the Court . The Parties expressly authorize their counsel to execute a stipulation and order of dismissal with prejudice and/or to submit any papers to the Court that are necessary to effectuate the dismissal of the Lawsuit and the underlying Complaint and/or full and effective release of all claims released herein. This Agreement shall become effective upon the issuance of an Order fully, finally, and unconditionally (1) approving this Agreement; (2) extinguishing, with prejudice, all claims asserted in the Lawsuit including all wage claims against the Defendants and other Releasees; and (3) dismissing all claims asserted in the Lawsuit including all of the wage claims based on Plaintiffs' employment (the "Effective Date").

3.    **Consideration.**

(a)    In consideration of the promises of Plaintiffs set forth herein and without any other obligation to do so, Drago Shoe Repair will pay the total gross amount of TWO-HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($200,000.00) ("Settlement Payment"). The Settlement Payment shall be disbursed as follows:

        (i)    By the later of (1) September 15, 2020 or (2) within seven (7) calendar days of the Court's final approval of this Agreement and dismissal of the Lawsuit and the Complaint with prejudice, Defendant Drago Shoe Repair shall make a lump sum payment of TWO-HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($200,000.00) as follows:

To the Plaintiffs:

        a.  $19,537.95 to Eduardo Macancela.
        b.  $16,710.09 to Victor Disla
        c.  $16,710.09 to Jose Gino DeSouza
        d.  $13,110.99 to Marco Tulio Saldanha
        e.  $16,710.09 to Jose Armando Sambula
        f.  $16,710.09 to Edgar Fernando Velicela
        g.  $16,710.09 to Edgar Patricio Velicela
        h.  $16,710.09 to John Jairo Velicela

To the Attorneys:
        i.  $40,508.63 to The Law Offices of Jacob Aronuaer
        j.  $26,581.89 to Beranbaum Menken LLP

Defendants shall deliver all checks listed above to counsel for Plaintiffs, at Law Offices of Jacob Aronauer, 225 Broadway, 3rd Floor, New York, NY 10007, attention: Jacob Aronauer, Esq. Plaintiffs agree that in order to receive any of the payments listed in Section 3, they must each provide, by and through their Counsel, Defendants' Counsel within six (6) calendar days from the Effective Date, at kd@greenwaldllp.com a completed IRS Form W-9., Plaintiffs' counsel must also provide their respective completed IRS Form W-9s to Defendants' counsel at kd@greenwaldllp.com.

(b)    The Parties agree that an IRS Form 1099 shall be issued for all monies paid to Plaintiffs.

(c)    Should the Court decline to approve the Parties' settlement and/or this Agreement, the Parties shall make a good faith effort to revise and/or modify this Agreement, and if the settlement is not ultimately approved, the Parties shall return to their respective positions as if there had been no settlement.

(d)    In the event that any of the Plaintiffs are unable to provide the required IRS W-9 forms on the date specified in 3(a), that shall not serve as a bar for Defendants to make the payments specified above to other Plaintiffs and Plaintiffs' counsel. To the extent that a Plaintiff is unable to provide the necessary IRS W-9 form by the date specified in 3(a), Jacob Aronauer, counsel for Plaintiffs, shall not distribute the settlement payment check his office received to that Plaintiff and Defendants shall stop payment on the payment check to that Plaintiff. Notwithstanding of the foregoing, Defendants will still be required to make payment to the Plaintiff within 15 days of receipt of the required completed IRS W-9 Form.

(e)    Plaintiffs each agrees to pay any and all taxes or other monies including judgments, liens and/or wage garnishments found to be owed by him/her from the Settlement Payment made pursuant to this Agreement and to indemnify and hold Defendants harmless from any claims, assessments, demands, penalties, and interest owed, or found to be owed, as a result of any taxes or other monies found to be owed by Plaintiffs from the Settlement Payment made pursuant to this Agreement and or the tax treatment of that payment. Plaintiffs each agrees to cooperate with Defendants and/or other Releasees should any state, federal, or local taxing authority approach it with regard to taxes Defendants and/or other Releasees owe as a result of any payment made hereunder. Drago Shoe Repair shall issue applicable IRS forms to Plaintiffs and/or their attorney for the payments detailed above, as appropriate, at the same time as the Drago Shoe Repair issues those forms to its current employees or other individuals/entities for the applicable tax year.

4

4.    **Breach; Cure**: In the event that Defendants fail to timely make the Settlement Payment, Plaintiffs will provide notice of such breach to Defendants' counsel by Federal Express mail as well as by e-mail to Kevin M. Doherty, Esq. at kd@greenwaldllp.com, 30 Ramland Rd, Ste. 201, Orangeburg, NY 10962. Upon receipt of the notice of breach, Defendants shall have ten (10) business days to cure any deficiency. In the event that Defendants fail to cure the noticed breach upon the expiration of the cure period, Plaintiffs will be entitled to recover any unpaid Settlement Payment amount from Defendants and reasonable attorney fees awarded with respect to the enforcement of the settlement agreement.

5.    **No Admission.** Plaintiffs and the Defendants and or other Releasees expressly agree that neither this Agreement, its execution, the performance of any of its terms, nor any of its contents will constitute, be construed as, or be offered as evidence of an admission of any fact or of any wrongdoing or liability by or on the part of the Defendants or other Releasees, and that the Defendants and other Releasees expressly deny any wrongdoing or liability on their part. Furthermore, the Parties agree that the Plaintiffs shall not be considered a prevailing party or a successful party.

6.    **No Reliance.** Plaintiffs each acknowledges that, by signing this Agreement, Plaintiff has not relied upon any representations, promises or agreements made by the Defendants, other Releasees, or their employees, officers, directors or representatives (including any of their attorneys) that are not contained in this Agreement.

7.    **Entire Agreement.** This Agreement contains the entire agreement and understanding of the Parties concerning the subject matter hereof. This Agreement may not be modified except by an instrument in writing signed by the Parties hereto. No waiver of any provision of this Agreement will be binding unless made in a writing signed by the Parties hereto.

8.    **Choice of Law.** This Agreement will be governed by, and construed pursuant to, the laws of the State of New York without regard to its conflict of laws principles. A court of competent jurisdiction in the County of New York, State of New York, shall adjudicate any dispute under this Agreement and the Parties consent to such jurisdiction, agree that venue shall be in the Southern District of New York, United States District Court.

9.    **Successors and Assigns.** This Agreement shall inure to the benefit of and be binding upon the Parties hereto. However, neither this Agreement nor any right or interest hereunder shall be assignable by Plaintiffs.

10.    **Headings/Counterparts.** The headings of the paragraphs herein are included for reference only and are not intended to affect the interpretation of the Agreement. This Agreement may be executed by each party in separate counterparts and by facsimile or PDF signatures, and each such duly executed counterpart shall be of the same validity, force and effect as the original.

11.    **Drafter of this Agreement.** In recognition of the fact that the Parties hereto had an equal opportunity to negotiate the language of, and draft, this Agreement, the Parties acknowledge and agree that there is no single drafter of this Agreement and therefore, the general rule that ambiguities are to be construed against the drafter is, and shall be, inapplicable. If any language in this Agreement is found or claimed to be ambiguous, each party shall have the same opportunity to present evidence as to the actual intent of the Parties with respect to any such ambiguous language without any inference or presumption being drawn against any party.

12.    **Representations of the Parties.** Plaintiffs and the Defendants represent and warrant that:

(a)    Each has the power and is duly authorized to enter into this Agreement with regard to all matters described herein upon the terms set forth herein, and the persons executing this Agreement are authorized agents for purposes of executing this agreement;

(b)    The execution of this Agreement does not put any party hereto in violation of any agreement to which s/he or it is a party; and

(c)    This Agreement constitutes a legal, valid, and binding obligation enforceable in accordance with the terms hereof.

13.    **Representations by the Plaintiffs.** Plaintiffs each represents and warrants that:

(a)    s/he has carefully read this Agreement;

(b)    s/he has had a reasonable period of time in which to review and consider this Agreement;

(c)    s/he has discussed this Agreement with his/her attorney;

(d)    s/he understands all of the terms of this Agreement;

(e)    s/he has not relied upon any representation or statement, written or oral, not set forth in this Agreement;

6

(f)      s/he has knowingly and voluntarily executed this Agreement; and

14.          **Representation by Counsel for the Plaintiffs:** the Law Offices of Jacob Aronauer represents that it has ensured that this Agreement was translated into Plaintiffs' native language to extent necessary for her/him to understand the terms of this Agreement.

**IN WITNESS HEREOF, the Parties and Counsel for the Plaintiffs have executed this Settlement Agreement and Specific Release on the dates shown below.**

**THE LAW OFFICES OF JACOB ARONUAER**

_____

Jacob Aronauer, Esq., principal of the Law Offices Of Jacob Aronauer

Date: _____

**PLAINTIFFS:**

_____        _____
Eduardo Macancela                       Date

_____        _____
Marco Tulio Saldanha                    Date

_____        _____
Victor Disla                            Date

_____        _____
Jose DeSousa                            Date

_____        _____
Jose Sambula                            Date

_____        _____

7

Edgar F Velicela                                  Date

_____             09-03-2020
Edgar Sr. Velicela                                Date

_____             _____
John Velicela                                     Date

**[Defendants' Signature Page to Follow]**

8

**DEFENDANTS:**

DRAGO SHOE REPAIR

By: Charles Drago, Principal
*On behalf of Drago Shoe Repair*

Dated: Aug 25, 2020

By: Charles Drago, individually

Dated: Aug 25 2020

9

Edgar F Velicela

Date

Edgar Sr. Velicela

Date

John Velicela

Date        09-03-2020

**[Defendants' Signature Page to Follow]**

8

# EXHIBIT B

**BERANBAUM MENKEN LLP**

**80 Pine Street, 33rd Fl.**

**New York, NY 10005**

**T: 212-509-1616**

**F: 212-509-8088**

**bmenken@nyemployeelaw.com**

<u>RETAINER AGREEMENT</u>

It is agreed that ▮▮▮▮▮▮▮ hereby retains the law firm of Beranbaum Menken LLP, for legal representation on the following terms:

1.    The subject of this retainer is the attorneys' representation of the client concerning various employment law related issues including, but not limited to, prosecuting and defending his interests in a potential arbitration proceeding against his employer ▮▮▮▮▮▮▮.

2.    The client agrees to pay Bruce E. Menken, partner and primary attorney in this matter, his regular rate of $650 per hour for his work. Should there be work that can be successfully performed by a Beranbaum Menken associate attorney, Menken will assign and supervise that associate attorney who will work at his/her regular rate, ranging between $300-$400 per hour. It is anticipated that Menken will perform most work.

3.    The client upon signing this agreement has paid a retainer fee toward representation in the above matter in the amount of $5,000.00.   This fee shall be deposited into the attorneys' trust account on behalf of the client and monies earned thereafter will be deposited into the attorneys' operating account with notice to the client.

4.    Upon the exhaustion of the retainer fee stated above, the client shall, at the attorneys' request, either replenish the initial retainer or promptly pay the attorneys' bill.   If the client refuses to replenish the initial retainer or fail to pay any bill within thirty (30) days of delivery, the attorneys may, at their discretion, terminate this agreement and shall not be obligated to perform any additional legal services on behalf of the client.

If this matter is completed and the above referenced retainer fee is not exhausted, the attorneys shall promptly return the remaining retainer fee or any other remaining fees to the client.

5.    All time expended on the client's case is billed, including but not necessarily limited to, time expended on telephone calls for any reason involving the client's matter

(incoming and outgoing), conferences, travel time (billed at one-half the above hourly rate), waiting time in conferences or meetings, conferences or meetings, preparation time, hearing appearances, court appearances, negotiations, drafting, legal research, etc, in units of one-tenth (1/10th) of an hour with a one-tenth (1/10th) hour minimum.

6.     The client shall also be responsible for all costs and disbursements reasonably necessary to the proper performance of the legal services, including, but not necessarily limited to filing fees, arbitration fees, expert witness fees, process service fees, deposition and hearing transcript fees, courier services, legal research fees, travel fees, excessive copying fees and any other costs arising in this matter. Costs and disbursements incurred that exceed $500 require client's approval.

7.     The client understands that this agreement does not include the prosecution or defense of any appeal. If either is appropriate and necessary, we will discuss what terms, if any, are appropriate to represent the client's interests and seek to come to an agreement to proceed.

8.     If you dispute that you owe any attorney's fees that may be billed by our firm, you have the right to elect to resolve that dispute by arbitration, under the Rules of the Chief Administrator of the New York Courts, Part 137.   This arbitration proceeding is not available if the dispute is for less than $1,000 or more than $50,000.   If I learn that such a dispute exists, I will send you a notice telling you how to file for arbitration.

9.   This is the entire agreement between us.   It may only be modified by a writing signed by both us.   By signing this agreement, you indicate that you have read it, fully understand it, and agree to its terms.

DATED:     New York, New York
           July 31, 2020



Beranbaum Menken LLP

**BERANBAUM MENKEN LLP**

**80 Pine Street, 33rd Fl.**

**New York, NY 10005**

**T: 212-509-1616**

**F: 212-509-8088**

**bmenken@nyemployeelaw.com**

## RETAINER AGREEMENT

It is agreed that ~~████████~~ ("client"), hereby retains the law firm of Beranbaum Menken LLP ("attorneys"), for legal representation on the following terms:

1.    The subject of this retainer is the attorneys' representation of the client concerning various employment law related issues.

2.    The client agrees to pay Bruce E. Menken, partner and primary attorney in this matter, his regular rate of $650 per hour for his work. Should there be work that can be successfully performed by a Beranbaum Menken associate attorney, Menken will assign and supervise that associate attorney who will work at his/her regular rate, ranging between $300-$400 per hour. It is anticipated that Menken will perform all work.

3.    The client upon signing this agreement has paid a retainer fee toward representation in the above matter in the amount of $6,500.00.   This fee shall be deposited into the attorneys' trust account on behalf of the client and monies earned thereafter will be deposited into the attorneys' operating account with notice to the client.

4.    Upon the exhaustion of the retainer fee stated above, the client shall, at the attorneys' request, either replenish the initial retainer or promptly pay the attorneys' bill.   If the client refuses to replenish the initial retainer or fail to pay any bill within thirty (30) days of delivery, the attorneys may, at their discretion, terminate this agreement and shall not be obligated to perform any additional legal services on behalf of the client.

If this matter is completed and the above referenced retainer fee is not exhausted, the attorneys shall promptly return the remaining retainer fee or any other remaining fees to the client.

5.    All time expended on the client's case is billed, including but not necessarily limited to, time expended on telephone calls for any reason involving the client's matter (incoming and outgoing), conferences, travel time (billed at one-half the above hourly rate),

waiting time in conferences or meetings, conferences or meetings, preparation time, negotiations, drafting, legal research, etc, in units of one-tenth (1/10th) of an hour with a one-tenth (1/10th) hour minimum.

6.    The client shall also be responsible for all costs and disbursements reasonably necessary to the proper performance of the legal services, including, but not necessarily limited to courier services, legal research fees, travel fees, excessive copying fees and any other costs arising in this matter. Costs and disbursements incurred in this matter are unlikely to exceed $200.

7.    The client understands that this agreement does not include the commencement of litigation or an arbitration. If either is appropriate and necessary, we will discuss what terms, if any, are appropriate to represent the client's interests and seek to come to an agreement to proceed.

8.    If you dispute that you owe any attorney's fees that may be billed by our firm, you have the right to elect to resolve that dispute by arbitration, under the Rules of the Chief Administrator of the New York Courts, Part 137.   This arbitration proceeding is not available if the dispute is for less than $1,000 or more than $50,000.   If I learn that such a dispute exists, I will send you a notice telling you how to file for arbitration.

9. This is the entire agreement between us.   It may only be modified by a writing signed by both us.   By signing this agreement, you indicate that you have read it, fully understand it, and agree to its terms.

DATED:        New York, New York
              May 31, 2020



_____

_____

Beranbaum Menken LLP